23 1803 Associated Builders and Contractors of Michigan v. Jennifer Abruzzo. Oral argument not to exceed 15 minutes per side. Mr. Dowdery for the plaintiff appellant. Good morning. May it please the court. Buck Dougherty on behalf of the appellant ABC Michigan. I have reserved five minutes for rebuttal. Very well. This court should reverse the district court and vacate its judgment for three reasons. First, the district court had subject matter jurisdiction over ABC Michigan's First Amendment free speech claims under the Larson framework. Second, ABC Michigan had associational standing to sue on behalf of its employer members because its members had standing in their own right to sue. Free speech is germane to ABC Michigan's purpose and the relief requested here does not require the individual participants. And third, on the merits, ABC Michigan plausibly pled a First Amendment free speech claim. Under this court's decision in Speech First, as well as the Bantam Books decision, as well as the recent Supreme Court decision in Volo, threatening prosecution is a violation of the First Amendment. In this situation, the NLRB General Counsel, her public memorandum, which she was not authorized to issue, as we noted in our brief, threatened the employer members of ABC Michigan, chilled their speech, prevented them from speaking to their employees at required work meetings regarding their views on unions. Do you have, in order to have associational standing, you have to identify at least one member who was planning, had some concrete plan to hold a meeting at which they would have delivered the speech that you want to deliver? And I don't see that alleged anywhere in your complaint. You just have a general, all members of ABC would have spoken on this, but doesn't the Supreme Court's case law, Susan B. Anthony, lest others require something more imminent? The NAACP case, I would say, does not require anything specific when all the members would be affected. The allegations in the complaint, Your Honor, do say that but for Abruzzo's memorandum, all the employer members would give these speeches. But that's a very high-level general allegation. It doesn't say all of our members had meetings planned in the next three months where we were going to sit down and, I mean, it can't be possible that all of your members are facing a unionization effort, right? Well, I think when you look at the memorandum itself, which is part of the record, in the first sentence, General Counsel Abruzzo actually says these meetings are held all the time by employers. So the allegations in the complaint, that can't be taken literally. It doesn't mean all the time by every employer. Sure, but I think the allegations are sufficient at the Rule 12 stage, where we are in this particular posture, that it was planned. And it's also important to note that the ABC Michigan is a statewide trade association in the construction industry. Anyone who is a member has to be and subscribe to the merit shop philosophy, which means they believe that neutral labor laws, both for employees and employers, should be the way that it should happen, just like the LRA itself. And therefore, it's certainly reasonable. We have allegations in the complaint that its president lobbies the state government and so forth. So it's reasonable that if they say in the complaint that they're but for the memo they would have meetings, coupled with Abruzzo's memorandum herself, that these meetings occur. Do you only have this sort of closed, this sort of captive audience meeting in a situation in which you're facing a unionization effort, right? Like the only reason to have the meeting would be when there's some effort at unionization. So unless you can find a member in that situation, I don't know how you have standing. Well, I think we have standing, as I said, but for the memorandum. If you look at Abruzzo's memorandum, her two areas, the cornering and the convening, which in the Amazon case, they didn't go that far. Those are not necessarily a situation like Your Honor puts forth, that it's just when there's a unionization movement. So I think that is critical and I think for that reason we do, we have shown associational standing in the complaint itself. Mr. Daugherty, we're familiar that President Trump fired the General Counsel on Monday. He also purportedly fired one of the members of the NLRB. So the practicalities I'm interested in, what practical relief do you still request in view of those circumstances? That's correct, Your Honor. It's our understanding from public reports that President Trump did fire Abruzzo Monday evening and it's my understanding that I believe Jessica Rutter is the acting NLRB General Counsel. So in terms of the caption, that would change. But to answer your question, it's also our understanding and certainly the record reflects that the memorandum was still posted. I can represent as an officer of this court, we checked the board website this morning and that memorandum, the captive audience memorandum, is still posted to the website. Certainly my friends on the other side can verify that. So that would be the relief. The relief is it's a threat, that these are jaw-boning tactics that Abruzzo has been using. That's the theory of the case. Okay, so if the memorandum is taken off the website, there's nothing left to this case? Well, that would be the relief. That's the relief that we're asking. So yes, that would, and so it's not, I don't believe that that issue has been mooted because it's my understanding the memorandum is still posted. But I'm missing something because the whole idea of the memo, from your perspective, was to encourage charges to be filed that would then allow her to have a vehicle case to get the NLRB to change their position on these captive meetings, which in the meantime they've done. And now there's no quorum for the NLRB to go back and have another case to undo what they just did. So where does all this, I'm still having trouble, like Judge Griffin is trying to figure out where does all this go? What are we doing here? Yeah, why are we here? Certainly there have been changes in the last 48 hours. I don't disagree with that. Well, even before, because the Amazon case was decided. So Judge McKee's question is, the memo is seek, your theory, the memo is seeking cases. Correct. So that Abruzzo can get the precedent changed. Precedents changed. So maybe you're still facing a threat, but it doesn't come from the memo. I believe it does. Even the 28J letter that was filed by opposing counsel says that the Amazon case doesn't go quite as far as Abruzzo in our memo wanted to. They even take that position. Abruzzo's not even there anymore. True. So there's no threat from Abruzzo, because Abruzzo is not general counsel. So it seems like the threat has been eliminated by the circumstances, right? Well, general counsel... I guess I could ask the current, the interim general counsel. Like, I don't think the president's appointed a new general counsel. If he has, I guess we ought to hear about it. One thing that's critical to this, and I understand certainly the last 48 hours, is that Abruzzo, the general counsel, whether it's past general counsel or future general counsel, does not have the authority under the Act to issue these public memoranda. That's the position that we're taking. She has abused that power by trying to kind of jawbone and go outside of the formal enforcement process. Well, isn't the posting on the website? I mean, the general counsel can issue memorandum to her employees, to her regional counsel, but I thought your problem was it was posted on a public website. Is that correct? It looks to me, when you look at the website, like it's every memo that the general counsel has written to regional counsel. I will ask the other side, but it seems to me like some transparency and government regulation may require that. So is your... I mean, I don't know. Maybe you could tell me, but like it's not like it's front and center on the website. It's just you go and it's... Has it always been there in some archived list? Not on this record. I mean, it's our understanding that under the APA, Congress, you know, this NLRB structure is an adversarial process. You have a prosecutor who's supposed to prosecute neutrally and not try to put their thumb on the scale, either for unions or employees or employers, and so that is one of the problems by using these memoranda to try to create a legal vehicle so that she can then go before the board and create the laws that she wants to create. That's not what a prosecutor is supposed to do. You're really more concerned, to answer the question earlier, you're concerned about the process here. You want us to say general counsels can't do this, regardless of whether what this one did has any practical import anymore. You want to establish a principle in this case. Is that it? I would be happy if Your Honor took that position, yes. I think because I think I don't think it's necessarily critical to this particular case, because I think the memorandum itself is a threat, and under Larson, you can sue. We would essentially be giving an advisory opinion to general counsel as to what they can and cannot do in the future. No, I think it would only be an advisory opinion. You had to say no to that. Of course. I think it would only be an advisory opinion, Your Honor, if the memorandum were down, and I think that, because that's the relief that we requested. So I think just having a change in the counsel doesn't necessarily change it. I see my time is out. I do have five minutes. So if Mr. Weiss stands up and says, fine, we'll withdraw the memo, then are you satisfied? I think so, if it will take it down. That's certainly the relief we requested. Now we see a path. Thank you. How about it? We can make this pretty easy. Good morning, Your Honors. Tyler Weiss on behalf of the NLRB General Counsel. There's a simple and straightforward way to decide this case, and it's not removing the memorandum from the Board's website. Well, if the memorandum doesn't make any difference because the NLRB has already decided, then why fight about keeping this on the website? Well, it's the principle of it, Your Honor. The General Counsel has been issuing these type of memorandum since the 1970s. Do you want the General Counsel, regardless of who's in charge, to be able to do this? That's correct, Your Honors. Okay, I got it. Yes, yes. And I think, you know, setting aside the issue of standing in this case, I think there's a more fundamental issue in this case, and that's the issue of subject matter jurisdiction. It's axiomatic that federal courts are courts of limited jurisdiction, and ABC has failed to establish that jurisdiction exists for its challenge to the General Counsel's memorandum. Two insurmountable obstacles preclude jurisdiction here. First, the National Labor Relations Act establishes an exclusive path for jurisdiction for challenging board action. Under Section 10 of the Act, the sole path for parties... Isn't board action. Correct, and that's the only thing that can be challenged under the statute itself. Right, but this also isn't charging an unfair labor practice. Their claim is a First Amendment claim. They're claiming that your client is chilling their First Amendment rights. So this isn't claiming an unfair labor practice. It's outside of that. Right, but even in situations where parties have raised constitutional challenges that come up in the context of... Of an unfair labor practice charge, but there isn't one here. Right, but the memorandum concerns unfair labor practices. If you allow ABC to raise this challenge in the abstract, then you open the door for any party to raise a challenge to any ongoing NLRB case. Isn't this just like Axon, though? I mean, that's exactly what happened in Axon, and they went through the Thunder Basin vectors, and they figured out whether or not this was collateral. And I know you say it's not collateral, but it seemed kind of collateral to me. Well, respectfully, Your Honor, when you run through the Thunder Basin factors, I think with respect to the collateral inquiry, I would look at the Supreme Court's decision in Elgin v. Department of Treasury where the constitutional issues were intertwined specifically with merits issues that were meant to be decided by the agency. The issue in this case, the primary issue at least, is whether captive audience meetings are unlawful under the National Labor Relations Act. Right. And only if you have that predicate finding do you reach the constitutional issue. Well... You're just restating what your friend on the other side says is the issue to a way that seems to favor your side. He seems to be saying, look, we want the court to say that you can't post these general counsel memos that threaten certain things because it chills our First Amendment rights. That's a considerably different issue than the way you're framing it, I would say. Well, I would respectfully disagree, Your Honor. I mean, the general counsel prosecutes complaints, deals with speech issues every day. Whether a statement that's made during a union campaign is unlawfully coercive or not is something that comes up in virtually every union campaign. Are there any other examples of a general counsel posting something on the Federal Register, essentially seeking cases to be able to then pursue a theory that that general counsel has? Yes, Your Honor. There are other examples. There are examples. If you look at the general counsel memoranda that are posted on the board's website. So just to back up for a second, they aren't posted on the Federal Register because there aren't rules or regulations or anything of that nature. What they are is merely advisory opinions issued by the general counsel to the public, and oftentimes those opinions deal with matters that have nothing to do with substantive labor policy, but sometimes they do. For example, one issue that the general counsel, I believe it was about ten years or so ago, issued a memo addressing the use of banners by unions on construction sites and seeking cases where unions had posted banners in an attempt to try to elicit charges in order to find those unlawful. And this is because the NLRB, unlike most agencies, doesn't actually use notice and comment rulemaking. So if your agency makes policy, the way they make policy is through this adjudication process. So the general counsel, because the general counsel needs cases in order to make policy for the agency, whether or not it's her or the commissioners or board members, you've got to find a vehicle. And because Chenery says you can proceed through rulemaking or adjudication, your claim is this is a necessary part of this. That's absolutely correct, Your Honor. You might be right, but it seems like an awfully complicated way. I'm wondering why – well, I guess you want us to say it's – they want us to say it's not okay. You want us to say it is okay. That's why you don't want to talk about standing, correct? Well, no, I'm more than happy to talk about standing because I think there's major issues there. But what I'd like to point to on this specific issue that you raised is the text of the statute itself. Section 3D of the Act authorizes the general counsel to prosecute cases before the board, to director, staff. It's an exceptionally broad grant of power. And under the Supreme Court's decision in Leadham v. Kine, in order to establish jurisdiction, direct district court jurisdiction in a case involving the NORA, which this case does, you need to show a violation of a clear statutory mandate. ABC has not come close to showing how these general counsel memoranda, which, again, have been issued for over 50 years, violate a clear statutory mandate under Section 3D of the Act. And so, therefore, under that established precedent, there isn't jurisdiction for ABC's claims. Well, I'm still concerned with the issue of whether we would be issuing an advisory opinion at this point since the general counsel memo, she no longer can show their rights since she's no longer the general counsel. And the events have happened down the road that if we say that this current posting by the former general counsel of threatening something that's already happened because the BATIC case has already been overruled, that, I mean, I can't even think of something that's more advisory than this because it doesn't seem like there's an active case in controversy at the moment since this is all hypothetical. They cannot be chilled at this point since the counsel's not even there and these things have already happened. I mean, do you agree with that? And we can dismiss it on the basis that they were really requesting advisory opinion at this point. Well, Your Honor, as we indicated in our 28-J letter, we don't believe that the Amazon decision fully mooted the dispute as to the terms of the memorandum itself. The general counsel can no longer threaten, no longer chill because the general counsel's not even there. Well, there's presumably a new general counsel. There is a new general counsel. Or will be. Is there a new? There's a new acting general counsel, Your Honor. I think your friend would say in answer to that question that this person's being sued in her official capacity. You just substitute the new one. What if the new general counsel were to write a memo that says, I'm no longer seeking these kinds of cases that are not already covered by Amazon and are, right, that these little pieces that Amazon doesn't cover. Which is likely to happen as soon as the president appoints a new general counsel. I would think that this issue will be the general counsel will seek to reverse this whole thing. And I think it's just a matter of time until he appoints a new general counsel. Well, I think, Your Honor, that we're going to be working on opinion. That's like, you know, we actually are a busy court up here. And we have a lot of things going on. And, you know, spending our time on a case that really doesn't make any difference, which to me, it doesn't make any difference here. I don't particularly like. Well, I understand that, Your Honor. I mean, as we indicated in our 28-J letter, you know, there are aspects of the memorandum that weren't covered by the Amazon decision. Obviously, the current general counsel was just terminated by the president on Monday. The current acting general counsel hasn't rescinded the memorandum. And I can't speculate as to what. Should we wait 60 days to issue an opinion to see if the new general counsel reverses course and cleans up this matter? I mean, rather than. I have other opinions to write, as Steve knows, I think. But, I mean, would that be a good course of action for us to take, just wait a little bit? That may be a prudent course of action for the court to take. The reason that the agency is continuing to pursue this case is the principle that's present here, that general counsel actions under the NLRB have traditionally been found to be non-reviewable. That should continue to apply here. There's no subject matter jurisdiction. There's also major issues with standing that touch on some of the concerns that you're raising, which I think relate to mootness. I guess you could look at it from the other side and say that assuming you have a new NLRB, once you get a quorum and you've got a majority that perhaps is going to view things differently, you've got a new general counsel, somebody could make the argument that transparently they ought to be posting this, something similar to this taking the other side, saying we're looking for vehicle cases so that we can reverse the decision that was just made. It's just the other side of the same coin. Right, exactly, Your Honor. And if we said you can't do this, which is what your friend wants us to do, then the NLRB, correctly or incorrectly, wouldn't be able to search for a vehicle case to overturn the one that they just issued. Well, I think that's partially true, Your Honor. What I would say, and ABC can correct me if I'm wrong, but I believe their position is that the general counsel can prosecute these type of cases. The issue is the posting of the memoranda. You can't advertise for them. Exactly, Your Honor. And I think that, tying into what was discussed earlier about standing, there's a major redressability issue here because, as the lower court spoke to, removing the memoranda doesn't really have any practical effect. These complaints have issued. She could issue a press release and say, I'm looking for cases to, Amazon went so far, but I want these other corners, or vice versa, the new general counsel could come in and say, please bring me a case so I can get rid of this Amazon thing. That's absolutely correct, Your Honor, yes. And so the memoranda, removing the memoranda, depublishing it from the website, however ABC wants to characterize its relief, even at the time of the complaint, didn't do anything to resolve the threat that its members were facing because the complaints were public. It was picked up in the press. There were statements made by the general counsel about this legal theory outside of the memoranda. The memoranda itself has no practical effect, and so obviously there may be a mootness concern right now based off of events that have transpired since the complaint, but at the time that ABC filed its complaint, there was a redressability problem because all they were asking for was to have the memoranda removed from the board's website, and that had no effect on the threat. If we gave the relief that the other side is looking for, because the NLRB doesn't do rule makings, I mean, I guess you could, right? How would you ever change policy? Because all your policymaking is done through adjudication. Well, I think the way it would be done would be – Because you need cases, so people would come bottom up rather than top down. Right. It would just require a party to file a charge without the presence of a memoranda, which parties do all the time. I mean, there's charges filed, thousands of them a year filed, and some of them seek to overturn existing precedents. So the memoranda doesn't really have any practical effect is the point that I'd like to make on that. Why doesn't the concept of memorandums have some practical effect, whether it applies here or not, I haven't sorted through in my own mind. But it seems to me that the labor community would be better served by knowing, if there's a vehicle, what the General Counsel's position is going to be on issues. On this particular one, is the new General Counsel going to seek to affirm or to reverse the decision on these captive meetings? It seems to me it would be useful to know that. Yeah, that's absolutely correct, Your Honor. And as the lower court indicated in its opinion, they cited to a D.C. Circuit decision on this point. But, you know, it's honestly a salutary practice for government officials to announce changes in policy as opposed to hiding them in, you know, individual administrative complaints. While those complaints are available to the public and are certainly out there, there's a benefit to announcing policy changes through these type of memoranda. And certainly in the case of the captive audience meeting issue, which is, you know. Well, a complaint is not as exciting to write about for Bloomberg, I suppose. Oh, they pick it up, though, even if it is a complaint. I promise that. So, and at the end of the day, you know, this case isn't about the merits of the legal theory contained in the memorandum, whether or not captive audience meetings are, in fact, unlawful under the NLRA. That's an issue that will be reviewed in due course of a final board order. The issue here is whether ABC has established jurisdiction and standing, and they have not. We ask that the judgment of the lower court be affirmed. Very good. Any further questions? All right. Mr. Doherty, you've got five minutes to rebuttal. Your Honor, I want to address a few points. Could I just ask you right in the beginning, and maybe we already talked about this, but why does this memo chill your members' First Amendment rights, any different than a brief that the general counsel might file in a case resulting from charges being brought by a union? Well, as we mentioned in the brief, it's wholly collateral. The memorandum is wholly collateral from the actual enforcement process. The general counsel is using the memoranda, and particularly this memorandum, to gain clients, to use a vehicle, to suppress employer speech. And how is that different from not having published the memorandum, but simply filing charges and a brief in support of those charges in an adjudicatory process? Well, one of the reasons is because the Babcock decision has been good law for 75 years, so employers could go and have these captive audience meetings and express their views on unions at required meetings. In the complaint, ABC Michigan employer members do not want to make threats of reprisal or promises of benefit. They don't want to do anything like that. They just want to express their views. So I think it's different. Back to the question I was asking your friend. Why wouldn't it be beneficial to your clients to know in advance, which seems sort of odd to me, but that's the process, to know in advance that the general counsel is seeking to change the law? Well, because Congress did not give the general counsel the right to change the law. It's an adjudicatory process, number one. To seek to change the law. The general counsel surely has that authority that seems to me to be unreviewable. Well, I think the argument that we made in our brief, that this is analogous to the back page decision in the Seventh Circuit when the sheriff in that case inserted himself into discussion of what he was going to do. In this particular situation, Abruzzo said, I'm going to urge the board essentially to change precedent that had been good law for 75 years. With all due respect, I still don't think you've answered the question. It's how this memo is different than saying exactly the same thing in a brief filed in support of charges. Because a brief filed before the board is within her statutory authority to be a prosecutor. Writing memoranda in a threatening way, as ABC Michigan alleges, is outside, it's wholly collateral from her statutory right as a prosecutor. And I think that's the difference. Again, going back to the issue, and Judge Larson talked about it, we believe it is wholly collateral. The allegations in the complaint are completely outside of general counsel's formal enforcement process. And that's critical. One other point, just to go back on the subject matter jurisdiction, Abruzzo brought a facial challenge under Rule 12b1, attacking jurisdiction versus a factual attack. She could have easily submitted an affidavit, a declaration, saying, I've got all of these powers, or we've, general counsels have written memoranda for 50 years, whatever the case may be, and the court could have had an evidentiary hearing to determine what, and if it had subject matter jurisdiction. But they didn't do that. Is there any factual dispute here about whether the general counsel has been issuing these types of memorandum for years? There is a factual dispute, because none of that is in ABC Michigan's complaint. It was listed in their brief, in their counterstatement, which is, we believe, inappropriate, because there's nothing in the record, and the district court was required to accept the facts as alleged. Well, these memos get posted. Is there some reason why we can't take judicial notice of what these memos say? I think certainly this court could take judicial notice. So if we did that, you're the one that's the expert in this. Has the general counsel been doing this for years? I would venture to say that there are statements in their brief, going back to the 70s, that counsel have done this in the past. We would argue that it's not been to the extent that this particular general counsel, who's actually referred to as the memo writer, and so that would kind of flow into our argument. Has anybody ever challenged the general counsel doing this from the 70s, to the best of your knowledge? To the best of my knowledge, no, Your Honor. So we would be issuing new law on this question, if we got to subject matter jurisdiction, on whether the general counsel can do this. Well, we haven't actually put that question before this court. It's not one of the issues that's for review, but it is part of the analysis. We argue that, under Larson, general counsels do not have the authority to do that. But the more important thing is that it is a threat, going back to Bannon books, to speech first. You haven't put that question to us. I thought you clearly put the question to whether this was alter veris. I see my time is up. May I answer your question? Sure. Under Larson, you can obviously sue a federal official for violating the Constitution, or if the federal official is acting outside the scope of their statutory authority. We allege both. I don't think this court necessarily has to get to the second point. I'm articulating it today to show that what she's doing is not an authorized government act, that memorandum. And so for these reasons, Your Honor, and certainly, Judge Griffin, we don't want this court taking extra time to write advisory opinions. We don't believe it is an advisory opinion because the memorandum is still up. So we would ask the court reverse. Thank you for your time. I have one very quick question. Yes, Judge Larson. You've said that if the memo came down, the case would be moved. What if the new general counsel wrote a memo saying, I'm no longer seeking cases that are outside whatever Amazon covers, the piece of Braddock that's left? I think that would be the same thing. That would also move the case? I think so, because that would be the relief that we would be requesting. Yes.  Thank you. All right, case will be submitted. Thank you for your arguments.